O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY ALMA MUSE,<br><br>    Plaintiff,<br>  v.<br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | Case No. EDCV 09-02156-OP<br><br>MEMORANDUM OPINION; ORDER |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

///
///
///

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See Dkt. Nos. 6, 7.)

[2] As the Court stated in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

# I.
# **DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

1. Whether the Administrative Law Judge ("ALJ") properly considered Plaintiff's residual functional capacity ("RFC");
2. Whether the ALJ properly considered the treating psychiatrist's findings;
3. Whether the ALJ properly considered the opinions of the state agency psychiatrists.

(JS at 2.)

# II.
# **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

///

## III.
## DISCUSSION

**A.  The ALJ's Findings.**

The ALJ found that Plaintiff has the severe impairment of an affective disorder not otherwise specified with bipolar features and a personality disorder not otherwise specified. (Administrative Record ("AR") at 10.) Relying on the testimony of a medical expert and a vocational expert, the ALJ found Plaintiff had the RFC to perform a full range of entry-level work at all exertional levels but with the following non-exertional limitations:  Plaintiff is able to perform moderately complex tasks with up to four to five steps of instructions "in a relatively habituated setting with no safety operations of others" and no fast-paced work such as rapid assembly. (Id. at 12.) The ALJ concluded that Plaintiff was capable of performing her past relevant work as a cashier, telemarketer, waitress, and pizza delivery driver. (Id. at 20.)

**B.  The ALJ Failed to Properly Considered the Opinions of the Treating Physician.**

Plaintiff contends that the ALJ improperly rejected the opinions of her treating psychiatrist, Ike Ohiaeri, M.D., in favor of the opinions of the medical expert who testified at Plaintiff's hearing before the ALJ. (JS at 10-12, 15-16.)

Plaintiff began psychiatric treatment with Dr. Ohiaeri, on August 8, 2006. At that time, Dr. Ohiaeri diagnosed bipolar disorder and rated Plaintiff's Global Assessment of Functioning ("GAF") at 55. (AR at 248-50.) On January 30, 2007, Plaintiff reported to Dr. Ohiaeri that she felt overwhelmed at work and was neglecting her home. Dr. Ohiaeri reported the Plaintiff's concentration was poor, her impulse control was poor, her affect was dysphoric, she looked sad, and a short attention span was evident. Dr. Ohiaeri's assessment of Plaintiff was "[g]uarded clinically." Dr. Ohiaeri advised Plaintiff to take a leave of absence from work and gave her an "[e]xcuse off work for 2 months." (Id. at 237.)

On February 1, 2007, Plaintiff reported throwing up and being emotionally uneven. She informed Dr. Ohiaeri that she had lost her job. Dr. Ohiaeri reported that Plaintiff was profoundly depressed and very anxious. She ordered Plaintiff to report to the hospital if she became suicidal. (Id. at 217.) On February 13, 2007, Dr. Ohiaeri reported treating Plaintiff following her discharge from Charter Oaks Hospital, where she was hospitalized for depression and suicidal ideations. (Id. at 218, 226-33.) Plaintiff's anxiety was better controlled at the time of her visit with Dr. Ohiaeri, but she continued to "have a lot of self doubt." (Id. at 218.) At that time, her affect was dysphoric, she looked anxious, and Dr. Ohiaeri assessed her as "[s]tabilizing." (Id.) On March 13, 2007, Dr. Ohiaeri reported that Plaintiff's mood was responding well to the medication regimen with "periodic mild mood fluctuation." (Id. at 220.) The doctor gave her an "[o]ff work extension for 6 weeks." (Id.) On May 1, 2007, Dr. Ohiaeri took Plaintiff "off work for 1 month." (Id. at 222.) On June 5, 2007, Dr. Ohiaeri noted that Plaintiff's therapist believed Plaintiff to be unstable, and Dr. Ohiaeri again recommended that Plaintiff "[s]tay off work [for a] couple of months." (Id. at 402.)[3]

In his decision, the ALJ offered the following discussion concerning Dr. Ohiaeri's findings:

> I have considered the expressions of inability to work by the treating psychiatrist and find these assertions refer only to the claimant being unable to return to her customary work while receiving medical evaluation or treatment. Such findings are not generally inconsistent with the residual functional capacity found herein.

---

[3] The Court notes that this is not an exhaustive summary of Dr. Ohiaeri's findings with respect to Plaintiff's mental status and may not include all of the findings relevant to an evaluation of Plaintiff's alleged disability. Rather, the summary here includes the findings most relevant to the ALJ's reasons for rejecting Dr. Ohiaeri's opinions.

(Id. at 19.)

It is well established in the Ninth Circuit that a treating physician's opinion is entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §§ 404.1527(d), 416.927(d). Where the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating physician's opinion is controverted, as appears to be the case here, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Thomas, 278 F.3d at 957 (citation and quotation omitted).

First, the ALJ's conclusion that Dr. Ohiaeri's expressions of Plaintiff's inability to work "refer only to the claimant being unable to return to her customary work while receiving medical evaluations or treatment" is not supported by the record. (AR at 19.) Dr. Ohiaeri gave a blanket recommendation that Plaintiff take significant periods of time off of work. In doing so, the doctor did not give any indication that the recommendation referred only to Plaintiff's inability to return to her customary work.

The ALJ also asserted that Dr. Ohiaeri's conclusion regarding Plaintiff's ability to work was "not generally inconsistent with the residual functional capacity found herein." (Id.) This Court disagrees. According to the ALJ's interpretation of the medical record, Dr. Ohiaeri restricted Plaintiff from performing her customary work. The ALJ, on the other hand, concluded that Plaintiff maintained the residual functional capacity to perform all of her past relevant work. (Id. at 20.) These two assessments of Plaintiff's ability to perform her past work are entirely inconsistent. Accordingly, although the ALJ provided specific reasons for rejecting Dr. Ohiaeri's findings, the ALJ's reasons were not legitimate reasons based on the substantial evidence of record.

The ALJ's failure to provide legally sufficient reasons for discounting Dr. Ohiaeri's opinion regarding Plaintiff's condition warrants remand. See Embrey, 849 F.2d 418, 422 (9th Cir. 1988) (in disregarding the findings of a treating physician, the ALJ must "provide detailed, reasoned and legitimate rationales" and must relate any "objective factors" he identifies to "the specific medical opinions and findings he rejects"); see, e.g., Nelson v. Barnhart, No. C 00-2986 MMC, 2003 WL 297738, at *4 (N.D. Cal. Feb. 4, 2003) ("Where an ALJ fails to 'give sufficiently specific reasons for rejecting the conclusion of [a physician],' it is proper to remand the matter for 'proper consideration of the physicians' evidence.'") (citation omitted). Accordingly, remand is required for the ALJ to set forth legally sufficient reasons for rejecting Dr. Ohiaeri's opinion, if the ALJ again determines rejection is warranted.[4]

**C.      The ALJ Properly Considered the Opinions of the State Agency Physicians.**

Plaintiff also contends that the ALJ improperly rejected the opinions of the State Agency non-examining psychiatrists, in favor of the opinions of the medical

---

[4] The Court expresses no view on the merits.

expert. (JS at 16-18, 20.)

On May 7, 2007, State Agency physician L.H. Naiman, M.D., completed a Case Analysis report. Dr. Naiman noted Plaintiff's past abuse of alcohol and drugs and opined that when she takes her medications and abstains from substance abuse "she is able to do non public unskilled work." (AR at 291-92.) On May 11, 2007, State Agency physician D.J. Williams, M.D., completed a Mental Residual Functional Capacity Assessment of Plaintiff. Dr. Williams concluded that Plaintiff exhibited moderate limitations in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychological symptoms, interact appropriately with the public, and set realistic goals or make plans independently of others. (Id. at 304-05.) Ultimately, Dr. Williams concluded that Plaintiff was "[i]nclined to do poorly under pressure, so needs less stressful work." (Id. at 306.) He explained that Plaintiff was "[c]apable of non public unskilled work, when taking meds, and not drinking or using meth." (Id.) Finally, on September 18, 2007, State Agency physician Henry Amado, M.D., affirmed the findings of Dr. Williams with respect to Plaintiff's residual functional capacity for "unskilled/nonpublic" work. (Id. at 323.)

"Findings of fact made by State Agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the [ALJ] and Appeals Council level of administrative review." Soc. Sec. Ruling 96-6p. Accordingly, an ALJ "may not ignore" the opinions of state agency medical consultants "and must explain the weight given to the opinions in their decisions." Id.; see also 20 C.F.R. § 416.927(f)(2)(i-ii).

Here, the ALJ considered the findings of the State Agency non-examining

7

psychiatrists and "g[a]ve significant weight to their assertions." (AR at 19.) However, the ALJ noted that the medical expert who testified at Plaintiff's hearing, Joseph Malancharuvil, M.D., "reviewed most of the records and was present to question the claimant and was able to hear her testimony." (Id.) Ultimately, the ALJ gave greater weight to the medical expert "because his conclusions [we]re more credible when considering the testimony of the claimant and the overall medical evidence." (Id.) The decision by the ALJ was sufficient to "explain the weight given to the opinions" of the State Agency physicians. Thus, there was no error.

### D. The ALJ Properly Considered Plaintiff's RFC.

Plaintiff contends that the ALJ improperly determined that she can perform her past relevant work as a cashier, telemarketer, waitress, and pizza delivery driver. (JS at 3-6.) Specifically, Plaintiff argues that she cannot perform her past relevant work because all of her past jobs require performing multiple tasks that exceed the four to five-step instructional limitation determined by the ALJ. (Id. at 3.) In light of the Court's conclusion that remand is appropriate so that the ALJ may properly consider Dr. Ohiaeri's opinions concerning Plaintiff's mental impairments, the ALJ is instructed on remand to also reconsider Plaintiff's residual functional capacity in light of all the medical evidence.

### IV.
### ORDER

Pursuant to sentence four of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED THAT Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Memorandum Opinion.

Dated: September 17, 2010

HONORABLE OSWALD PARADA
United States Magistrate Judge